BENJAMIN T. RLODGETT *v.* THE TOWN OF BRATTLEBORO.

*Liability of officer for neglect.*

Where a constable received a writ with directions to serve it by arresting the defendant's body, an affidavit having been duly filed that he was about to leave the state, and the officer, erroneously thinking he was not bound to serve it without indemnity, returned the writ to the plaintiff, stating his reasons for not serving it; and the defendant remained publicly living within the state, for several months afterwards, and the plaintiff had an opportunity to issue another writ and arrest him thereon, but neglected doing so; *Held*, in a suit against the constable's town for his neglect, that these facts should have been submitted to the jury to be considered by them in connection with the question of mitigation of damages.

A sheriff or constable who is not guilty of gross and wilful neglect in not serving process, but acts in good faith, though erroneously, is only liable for the *actual* damage which the plaintiff sustains by reason of his neglect of duty.

CASE for the neglect of one Salisbury, the defendant's constable, to serve a writ in favor of the plaintiff against one Hall. Plea, the general issue, and trial by jury. The writ issued against the body of Hall, an affidavit having been duly filed that he was about to leave the state, etc. It appeared that the writ was received by Salisbury in December, 1854, with instructions to serve the same by attaching property, or arresting Hall; that he had ample opportunity to arrest Hall at Brattleboro, where he then resided. He did not, however, arrest him, but wrote the plaintiff that Hall assured him he was not going to leave the state, and asking for indemnity before he served the suit, to which he received no answer, and on the 22d of January, 1855, he returned the writ to the plaintiff, referring to his former letter, and declining to serve it without indemnity. On the 13th of December, Hall wrote to one Dodge, who owned the demand on which the suit was brought, saying that Salisbury had not yet served the writ, but that if he arrested him upon it, he should go to Bradford, before the authority signing the writ, and show that he was not about to leave the state.

The plaintiff introduced evidence tending to show that after the aforesaid letters were received, Dodge was advised by counsel that another affidavit for a second writ against Hall's body could not be properly and safely made; that while the writ was in Salisbury's hands, there was some real estate worth two or three hundred dollars, belonging to Hall, standing in another's name in trust; that in the summer of 1855, Hall removed from Brattleboro to New York, where he remained till March, 1856, when he died wholly insolvent.

The defendant's evidence tended to show that when Salisbury received the writ, he could find no property belonging to Hall: that Hall told him he was not going to leave the state, and that he should sue him for false imprisonment if he arrested him; that Salisbury thereupon wrote to the plaintiff at Bradford, as above mentioned, and receiving no answer, wrote again on the 22d of January, 1855, returning the writ without any expense to the plaintiff, and that no other writ was sent to Salisbury by the plaintiff; that when Salisbury received the writ, no debt could be secured against Hall by attachment of property; that Hall openly remained in Brattleboro till October or November, 1855, and that up to that

time Salisbury had heard of no intention on the part of Hall to leave the state. The defendant's evidence further tended to show that there was no change in Hall's circumstances from the time of his failure, which took place in September, 1854, until his decease, and that no other attempt was made to collect Dodge's claim of him.

The defendant requested the court to charge the jury that they would be at liberty to take into consideration, in mitigation of damages, the fact that Hall remained openly at Brattleboro, where he might have been arrested on another writ in favor of the plaintiff against him, till the fall of 1855, and that no other attempt was made to collect the debt of him ; but the court declined so to charge, and the defendant excepted.

*Peck & Colby,* for the defendant.

*Ormsby & Farnham,* for the plaintiff.

The opinion of the court was delivered by

POLAND, J. The only question of importance presented by the exceptions, is whether the defendant was entitled to claim, substantially, such instructions to the jury as he requested, upon the subject of the plaintiff's failure to have his writ served upon Hall, after Salisbury, the constable, had failed to serve it, as instructed to do. The plaintiff insists, that even if the defendant was entitled to have such instructions as he claimed, yet, as no objection was made to the charge as given, it is to be assumed that the court did instruct the jury that the plaintiff was bound to use all reasonable diligence, and that he could not recover for any damages occasioned by the want of such diligence, and that therefore the same question was really before the jury, though in another form, and in different terms.

But we think this is not fairly to be inferred from the exceptions, and that we can only suppose, as the case is made up, that the subsequent neglect of the plaintiff to procure his writ to be served, was wholly withdrawn from the consideration of the jury, in assessing the damages.

Was the defendant entitled, in case the jury found the facts as his evidence tended to prove them, to have those facts considered as tending to lesson, or mitigate the damages claimed by the plain-

Blodgett *v.* The Town of Brattleboro.

tiff? Any party who gives legal evidence relative to a cause tried, is entitled to claim instructions to the jury, upon the theory that the facts are found as his testimony tends to prove them. The plaintiff had obtained a writ against Hall's body, by filing an affidavit as required by our statutes, and sent it to Salisbury, the constable of Brattleboro, with directions to attach property if he could find it, and if not, to arrest Hall's body. It does not appear to have been claimed that Hall had any visible attachable property, but it was claimed that he was the owner of a considerable amount of property that was so covered up and concealed, that it could not be attached, but such as would prevent Hall from taking the poor debtor's oath, and such as could be made available to satisfy the plaintiff's debt, by seizing Hall's body.

The writ was sent to Salisbury to serve, in December, 1854, but he could find no property to attach, and on presenting the writ to Hall, he was assured by Hall that he was not going to leave the state, and it would appear by the letter from Salisbury to the plaintiff, that the officer supposed, if this assurance was true, that he would be personally liable if he arrested the body of Hall.

Salisbury thereupon sent back the writ to the plaintiff, with such information as he had got from Hall, and his reasons for not serving it. The plaintiff's evidence tended to prove that Hall continued to reside openly in Brattleboro, till some time in the summer of 1855, when he removed to New York. The defendant's evidence tended to prove that he continued to reside in Brattleboro till as late as October, or November, 1855. The plaintiff knew as early as January, 1855, when Salisbury returned his writ, that it had not been served, and that Hall was still in Brattleboro, and professed that he intended to remain there.

The reason given by Salisbury for not serving the plaintiff's writ, was clearly no legal justification for not serving it, nor was he entitled to claim any indemnity from the plaintiff, before arresting Hall's body upon the writ, but for aught that appears in the case, the officer acted in good faith, and with no wilful purpose of violating the law, or to disregard his proper official duty. His ignorance of the law could not avail him as a defence against any loss the plaintiff sustained by it, but it does, as we think, relieve the case of much that has been said in many cases, as to a wilful violation

of duty by an officer, having the effect to prevent him from having the benefit of all matters of mitigation, to reduce the plaintiff's damages to the amount of his actual loss.

It seems thus to have been conceded, that there was, at least, a period of several months after the plaintiff knew that the defendant had not served his writ, but had returned it to him without service, when Hall was publicly residing in the state, and when his body could have been arrested.

But the plaintiff claims, that it appears by the case that he could not have another writ against Hall's body, for the reason that Salisbury's letter, and Hall's letter, had informed the plaintiff that Hall was not going to remove from the state, and that, therefore, the plaintiff could not safely make another affidavit, upon which to obtain another attachment against his body.

But it does not appear that there had been the slightest change *in fact*, in reference to Hall's intention to leave the state, and if the plaintiff had obtained a writ upon an affidavit not well founded in fact, Hall could, of course, have procured the attachment to be vacated, on application to the authority signing it, so as to make an arrest upon it wholly unavailing.

We think that nothing in the case shows that another writ might not have been taken out, of equal validity as an attachment against Hall's body, as the writ sent to the officer to serve. The plaintiff's evidence tended to prove that Hall, at the time Salisbury had the writ in his hands, was the owner of property that was kept under cover, but the case does not show there was any evidence that he did not continue the owner for the whole time he remained in the state, and that it was equally available to the plaintiff, and, in short, the case presents no reason why another writ, served any time while Hall remained in the state, would not have been just as beneficial to the plaintiff, toward obtaining his pay of Hall, as the one sent to Salisbury. The question is then fairly presented : Was the plaintiff justified in folding his hands and foregoing all attempt to collect his debt of Hall, and can he thus make the officer, or the town, liable for the full loss ?

The bearing of the courts in this state, as well as in others, has been not to hold sheriffs, or other officers of that class, liable for damages for any neglect of duty, unless the same was gross and

wilful, beyond a fair compensation to the party for his actual loss ; and several recent cases have held this to be the rule, where formerly the plaintiff would probably have been allowed to recover the full amount of his debt. See *Kidder* v. *Barker,* 18 Vt. 454; *Ives* v. *Strong,* 19 Vt. 546.

The principle that a plaintiff shall not be permitted to recover for any damages occasioned by his own neglect, or omission to use reasonable diligence, is not at all peculiar to actions against officers, but such actions are perhaps as proper for its application as any other.

In any case where one claims to have sustained damages by the wrongful act or neglect of another, if the injury has been increased or aggravated, by the party's own fault, or neglect, to that extent, he can not recover. This principle has repeatedly been applied in actions of this character. The cases of *Wolcott* v. *Gray,* Brayton's Rep. page 91 ; *Wild* v. *Bartlett,* 10 Mass. 470 ; and *Clark* v. *Smith,* 10 Conn. 1, are all of this character, and fully sustain the doctrine.

The case of *Clark* v. *Smith,* was this : The defendant's deputy served a writ in the plaintiff's favor, by attaching certain property, but by some mistake he did not return the writ in season, and the attachment was thereby released.

The plaintiff was informed of the failure of his attachment in season to have prayed out another writ, and re-attached it on his debt, but he neglected to do so, and the property was afterwards attached by another creditor, and lost to the plaintiff. The plaintiff claimed to recover the value of the property of the sheriff, but the court held that his neglect was proper to be considered by the jury in mitigation, and that the plaintiff was only entitled to recover the damages he had actually sustained by the officer's default.

The doctrine of these cases meets our entire approbation, and we apprehend they are not only in accordance with the great current of adjudged cases, but with general legal principles, and the plainest precepts of natural justice.

The only case brought to our attention which is claimed to conflict with these cases, is the case of *Arden* v. *Goodacre,* 5 Eng. Law and Eq. 436. That was a suit against the defendant, as sheriff of Leicestershire, for his bailiff's default, for an escape of a debtor

Blodgett *v.* The Town of Brattleboro.

who had been taken in execution. The defendant claimed to reduce the damages by showing that the plaintiff's attorney had notice of the debtor's arrest by another sheriff, and might have retaken him. The court held that the damages could not be thus reduced.

That case may be distinguished from this, in various particulars. The defendant, or his bailiff, continued to hold the execution, and could himself have retaken him at any time; in this case, after Salisbury returned the writ, he had no means or power to arrest Hall; he had no process in his hands. In that case, the debtor's body was taken in execution to satisfy the judgment; here, the body was arrested merely to detain the party, so that he might be taken in execution when the judgment was recovered, if one should be. There, if the sheriff was compelled to pay the whole debt, that would not prevent him from taking the debtor in execution, or from bringing an action to recover the same from him; in the present case, whatever is collected of the constable, or the town, they are wholly without remedy against the debtor in any manner.

It is somewhat difficult in many of the more recent English cases, to judge from the report of the cases, how far they are governed, or affected, by recent legislation of parliament upon the subject involved, and the remark is entirely true of this case; but even if the case could be shown to be in conflict with the general course of decisions on that subject, we should not feel justified in following a single case, against what we regard as the settled law, both by authority, and upon principle. Upon what appears to have been the evidence at the trial, we are of opinion that the defendants were entitled to claim a charge substantially in accordance with their request, and that the omission of the court to comply with it, was erroneous, and for that reason the judgment is reversed, and the case remanded for a new trial.